MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY OWENS,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)　　No. 06 C 3276
　　　　　　　　　　　　　　　　　　)
MAURICE POWELL, GARY OLIVA,　　　　)
LEMAR LASTER, PATRICK O'MEARA,　　 )
CITY OF CALUMET CITY, and　　　　　 )
UNIDENTIFIED CALUMET CITY　　　　　 )
POLICE OFFICERS,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　)

## OPINION AND ORDER

　　　　Plaintiff Anthony Owens alleges that members of the Calumet City, Illinois Police Department subjected him to excessive force, including by tasing him. He contends the excessive force was committed pursuant to an official policy and custom and seeks to also hold the City liable and the Chief of Police in his individual capacity. Named as defendants are Calumet City Police Officers Maurice Powell, Gary Oliva, and Lemar Laster, Police Chief Patrick O'Meara, and the City of Calumet City. Defendants have moved for summary judgment. All defendants contend that evidence does not sufficiently support that plaintiff was subjected to unreasonable force. Even if

plaintiff can sufficiently support that he was subjected to excessive force, Oliva contends the claim against him should be dismissed because he had no personal involvement in the incident. O'Meara also contends he had no personal involvement and that no policy for which he can be held personally responsible caused injury to plaintiff. The City contends there is insufficient evidence of any official policy or custom causing injury to plaintiff. To the extent plaintiff's claim otherwise survives summary judgment, defendants contend that there is no sufficient evidence supporting that plaintiff's rhabdomyolysis or related kidney failure was caused by the tasing.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Scott v. Harris, 127 S. Ct. 1769, 1774, 1776 (2007); Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008); Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Hicks v. Midwest Transit, Inc., 500 F.3d 647, 651 (7th Cir. 2007); Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer, 472 F.3d 943, 946 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof

at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hicks, 500 F.3d at 651; Jumer, 472 F.3d at 946. The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Lorillard Tobacco Co. v. A & E Oil, Inc., 503 F.3d 588, 594-95 (7th Cir. 2007); Yasak v. Retirement Bd. of Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir. 1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir. 1988); Freundt v. Allied Tube & Conduit Corp., 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case."

> Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once
> the moving party satisfies this burden, the
> nonmovant must "set forth specific facts showing
> that there is a genuine issue for trial." Fed.
> R. Civ. P. 56(e). "The nonmovant must do
> more, however, than demonstrate some factual
> disagreement between the parties; the issue
> must be 'material.'" Logan, 96 F.3d at 978.
> "Irrelevant or unnecessary facts do not preclude
> summary judgment even when they are in dispute."
> Id. (citation omitted). In determining whether
> the nonmovant has identified a "material" issue
> of fact for trial, we are guided by the
> applicable substantive law; "[o]nly disputes that
> could affect the outcome of the suit under
> governing law will properly preclude the entry of
> summary judgment." McGinn v. Burlington Northern
> R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)
> (citation omitted). Furthermore, a factual
> dispute is "genuine" for summary judgment
> purposes only when there is "sufficient evidence
> favoring the nonmoving party for a jury to return
> a verdict for that party." Anderson v. Liberty
> Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505,
> 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical
> doubt" regarding the existence of a genuine fact
> issue is not enough to stave off summary
> judgment, and "the nonmovant fails to demonstrate
> a genuine issue for trial 'where the record taken
> as a whole could not lead a rational trier of
> fact to find for the non-moving party . . . .'"
> Logan, 96 F.3d at 978 (quoting Matsushita Elec.
> Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
> 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
> (1986)).

Outlaw, 259 F.3d at 837.

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of ruling on defendants' summary judgment motion are as follows. Plaintiff Anthony Owens is an

African-American male born in 1963. He resides in Calumet City and has worked for the Chicago Transit Authority for more than 15 years, including more than 10 years as a supervisor. Plaintiff has been married to Sandra Owens ("Sandra") since 1995. As of September 18, 2005, plaintiff had a ten-piece permanent bridge in his mouth.

The incident that is the subject of this lawsuit began approximately 4:45 p.m. on Sunday, September 18, 2005. Between 1:30 and 4:30 p.m. that day, plaintiff had consumed a total of four beers while watching football on television with his then 17-year-old son, Terrence. As of 4:45 p.m., plaintiff was not intoxicated.[1] It is undisputed that Sandra reported to the police that plaintiff was intoxicated, but the responding officers could have seen otherwise when they actually entered plaintiff's home.

While plaintiff was home watching football, Sandra was out with her sister and daughter. Sandra arrived home around 4:45 p.m. Before Sandra had gone out, she and plaintiff had "words." When Sandra returned, plaintiff wanted to continue that conversation. During this discussion, the couple mildly shoved

---

[1] There is other evidence from which the factfinder may infer that plaintiff was intoxicated at the time, but, on defendants' summary judgment motion, plaintiff's testimony as to how much alcohol he had consumed must be accepted as true. Also, it is a reasonable inference from that testimony that he would not have appeared intoxicated when the police saw him.

each other and Sandra ended up outside with Terrence and plaintiff ended up inside with Sandra's cell phone. Plaintiff locked Sandra out of the house, at which point Sandra became angry. Sandra used Terrence's cell phone to call the police. Defendants Powell and Laster, and non-defendant Alphonse Mora, responded to the call. Powell arrived first. Sandra told Powell that she and plaintiff had a confrontation and had been tussling over her cell phone. When asked by Powell, she affirmatively responded that plaintiff had been drinking.

Plaintiff let the officers into the house and treated them respectfully. Sandra, Terrence, Sandra's sister, and plaintiff's older son, Antonio, also came in. After seeing plaintiff's marine pictures around the house, Powell said to plaintiff, "You're not a damn Marine. . . . Marines don't hit women." Shortly thereafter, Powell handcuffed plaintiff and told him he was under arrest. Plaintiff cooperated when being handcuffed and walked out of the house. While Powell was walking plaintiff to Powell's squad car, plaintiff looked back at his sons and told them it would be okay. Powell then forced plaintiff to the ground by pulling up on the handcuffs with one hand and pushing down on plaintiff's shoulder with the other hand. This resulted in plaintiff's face being slammed onto concrete, knocking out and damaging plaintiff's permanent bridge. Plaintiff was bleeding from his mouth. He subsequently needed a

root canal and another tooth removed in order to attach a new bridge. After being placed in Powell's squad car, plaintiff was transported to the police station.

Plaintiff cooperated while being transported and at the police station. He was still bleeding from his mouth and trying to request medical attention. While there is evidence from which a factfinder may find otherwise at trial, on defendants' motion for summary judgment, it must be accepted as true that plaintiff was cooperative, not confrontational, and did nothing to provoke being tased at the police station. Not in response to any conduct by plaintiff, Laster tased plaintiff. Plaintiff fell to the floor and hit his chin on concrete. The electric shock lasted five seconds.[2] Afterwards, plaintiff was placed in a holding cell. Around 6:00 p.m., paramedics arrived. They provided some treatment at the station and transported plaintiff to a hospital where he received 46 stitches and was treated for a head contusion, concussion, abrasions and swelling to his face, and a lacerated lip.

---

[2]Plaintiff testified that it lasted 60 to 90 seconds, but also testified he passed out. Laster testified he gave plaintiff one 5-second burst. Data from the taser supports Laster's testimony. Since plaintiff passed out and was otherwise under duress that would have made it difficult to judge time and since the data from the taser is objective, plaintiff's testimony as to the duration of the burst is not sufficient to support a genuine factual dispute.

Eleven days after the incident, plaintiff returned to the same hospital and was diagnosed as having rhabdomyolysis. The following description of rhabdomyolysis is uncontested:

> Rhabdomyolysis is a syndrome characterized by a muscle necrosis and the release of intracellular muscle constituents into the circulation. The clinical entity occurs mainly from two sources: traumatic and nontraumatic. Traumatic rhabdomyolysis has been described as injuries from crush syndrome during war and natural disasters. Nontraumatic rhabdomyolysis is the majority of the cases, and alcohol abuse is one of the most common causes, along with drug use, heat exhaustion, infection, and enzyme disorders.

Def. Rule 56.1(a)(3) Stmt. [69] ¶ 53. Plaintiff was hospitalized nine days and suffered temporary loss of kidney function.

On the facts that must be accepted as true for purposes of summary judgment, defendant Powell forcibly threw plaintiff to the ground for no possible reason other than plaintiff saying to his sons that things would be okay. Defendant Laster tased plaintiff for no reason. Powell's action knocked out plaintiff's bridge and otherwise injured his face and head. Laster's action caused further injury to plaintiff's face and head, including a concussion. Each of these defendants caused a severe injury[3] that was unprovoked by any conduct on plaintiff's part or any need to restrain plaintiff. In each circumstance, there is

---

[3] Even if the rhabdomyolysis was not caused by the tasing, Laster caused other severe injuries.

adequate evidence to support a constitutional claim of excessive force against, respectively, Powell and Laster. See Chelios v. Heavener, 520 F.3d 678, 691-92 (7th Cir. 2008) (quoting Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996)); Holmes v. Village of Hoffman Estate, 511 F.3d 673, 686-87 (7th Cir. 2007); Lopez v. Dart, 2008 WL 4889088 *3-4 (N.D. Ill. July 17, 2008); DeSalvo v. City of Collinsville, Ill., 2005 WL 2487829 *3-5 (S.D. Ill. Oct. 7, 2005).

As to Oliva, plaintiff responds with no argument as to how Oliva was personally responsible for either act of excessive force. Plaintiff does not even point to any evidence that Oliva was at plaintiff's house or in the police station at the time of the incident. The claim against defendant Oliva will be dismissed.

As to the City, it cannot be held liable unless the excessive force was pursuant to a municipal policy or custom, that is, the policy shown was a moving force behind the constitutional violation. Estate of Sims ex rel. Sims v. County of Bureau, 506 F.3d 509, 514 (7th Cir. 2007); Almaraz v. Haleas, 585 F. Supp. 2d 988, 992 (N.D. Ill. 2008). "A plaintiff may demonstrate an official policy through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the

constitutional injury was caused by a person with final policymaking authority." Sims, 506 F.3d at 515. O'Meara can only be liable if evidence sufficiently supports that he was aware of and personally responsible for any such policy or custom. See Almaraz v. Haleas, 2008 WL 4547222 *6-7 (N.D. Ill. April 25, 2008) (quoting Anderson v. Cornejo, 284 F. Supp. 2d 1008, 1029 (N.D. Ill. 2003) (quoting Anderson v. Cornejo, 225 F. Supp. 2d 834, 859-60 (N.D. Ill.2002), rev'd in part, vacated in part, 355 F.3d 1021 (7th Cir. 2004))).

In his brief, plaintiff refers to three policies of the City: (1) a wide-spread practice of tasing African-Americans more often than non-African-Americans; (2) a wide-spread practice of failing to document the race of persons who are tased; and (3) a wide-spread failure to follow the written policy of documenting the removal of the taser prongs and photographing the penetration site when medical attention is necessary. Initially, it is noted that all these policies relate to tasing; none relate to Powell's conduct of slamming plaintiff to the ground.

As to the third purported policy, plaintiff does not explain how failing to follow a policy of such documentation causes the use of excessive force. Also, there is no contention that the manner of removing the taser prongs from plaintiff caused additional injury. Since there is no showing of a causal relationship between this policy and the excessive force or

plaintiff's injury, it is unnecessary to consider this policy further or even consider whether there is adequate evidence of this being a wide-spread practice.

As to the second purported policy, it is unclear how failing to document the race of persons tased contributed to the claimed violations and injury. Plaintiff suggests that failing to perform such documentation contributes to African-Americans being disproportionately tased. Even if plaintiff has made an adequate showing to that effect, it would still have to be shown that there was a disproportionate tasing of African-Americans and that it was a cause of plaintiff's excessive force. Therefore, the second policy need not be considered further. Instead, the first purported policy will be directly considered.

While there is evidence that plaintiff is African-American, there is no evidence that plaintiff's race motivated his tasing. Plaintiff does not point to any evidence that Laster was motivated by race or that the watch commander, who may have ordered Laster to use the taser, was so motivated. Additionally, even if the existence of such a practice in the Calumet City Police Department and plaintiff being African-American were, by themselves, enough to draw such an inference, plaintiff has not made an adequate showing of such a practice. For certain taser reports, the subject's race can be determined by associating the taser report with the related incident report. Those reports

concern 72 tased subjects, of which 69 (95.8%) are African-American. That proportion, however, is meaningless without information regarding the proportion of arrestees who are African Americans.[4] Cf. Banker v. Cook County, 1997 WL 458436 *4 (N.D. Ill. Aug. 4, 1997); Nabat v. Aetna Cas. & Sur. Co., 1993 WL 390373 *7 (N.D. Ill. Sept. 30, 1993), aff'd by unpublished order, 45 F.3d 432 (7th Cir. 1995). Plaintiff has failed to provide sufficient evidence of a custom of discriminatorily tasing African-Americans or that any such custom was a cause of plaintiff being tased.

Since plaintiff has not provided sufficient evidence of the existence of a wide-spread practice and/or a causal relationship between any such practice and the violative conduct, the claims against the City and O'Meara will be dismissed.

As to the remaining excessive force claim against Laster, defendant[5] contends there is insufficient evidence that plaintiff's subsequent rhabdomyolysis was caused by being tased. Ted Thachenkary, M.D., was plaintiff's treating physician for the

---

[4]If the use of a taser mostly occurs in relationship to certain types of crimes, further refinement of the data might also be necessary. Also, there are only limited situations in which statistics alone are adequate proof of discriminatory intent. See Chavez v. Illinois State Police, 251 F.3d 612, 647 (7th Cir. 2001).

[5]All defendants raised this contention, but Laster is the only remaining defendant for whom this issue is applicable.

second admission to the hospital. Defendant contends Thachenkary's opinions as to plaintiff's rhabdomyolysis being caused by the tasing should be ignored because plaintiff's Rule 26(a) disclosures[6] do not list him as a witness, identify him as an expert witness, or disclose any expert opinions that will be offered, and plaintiff provided no expert report from Thachenkary. Defendant does not dispute that Thachenkary was deposed and questioned about his pertinent opinions.

First, since Thachenkary was a treating physician, the requirement of providing a report is inapplicable. That requirement only applies to witnesses retained for the purpose of providing expert opinions or employees of a party who regularly provide such opinions as part of their job duties. See Fed. R. Civ. P. 26(a)(2)(B); Musser v. Gentiva Health Serv., 356 F.3d 751, 756-57 (7th Cir. 2004); Abrams v. Van Kampen Funds, Inc., 2005 WL 88973 *4 (N.D. Ill. Jan. 13, 2005); Denson v. Northeast Ill. Reg'l Commuter R.R. Corp., 2003 WL 1732984 *1 (N.D. Ill. March 31, 2003). Rule 26(a)(3)(A)(i), however, still required that Thachenkary be disclosed as a witness and Rule 26(a)(2)(B) required that it be disclosed that he may be used to express medical opinions. Musser, 356 F.3d at 756 & n.2; Abrams, 2005 WL

---

[6]Defendant also objects that the Rule 26(a) disclosures are not signed. In response to summary judgment, plaintiff acknowledges the Rule 26(a) disclosures. They will be regarded as submitted and signed.

88973 at *4; Denson, 2003 WL 1732984 at *1. Defendant, though, was not prejudiced by the failure to make such a disclosure since Thachenkary was deposed and fully questioned regarding his opinions relating to plaintiff's rhabdomyolysis being caused by the tasing. Under those circumstances, Thachenkary's opinions will not be barred for failure to make proper Rule 26(a) disclosures. See Commonwealth Ins. Co. v. Titan Tire Corp., 398 F.3d 879, 888 (7th Cir. 2004); United States Gypsum Co. v. LaFarge N. Am., Inc., 508 F. Supp. 2d 601, 616 n.3 (N.D. Ill. 2007); Heidelberger Druckmaschinen AG v. Ohio Elec. Engravers, Inc., 2000 WL 631382 *6 (N.D. Ill. May 12, 2000).

Plaintiff does not dispute that medical opinion testimony is necessary to support that plaintiff's rhabdomyolysis was caused, at least in part, from being tased. The burden is on plaintiff to establish that particular injuries and damages were caused by defendant's wrongful conduct. Krischel v. Hennessy, 533 F. Supp. 2d 790, 794 (N.D. Ill. 2008). Plaintiff relies on Thachenkary's testimony that, to a reasonable degree of medical certainty, there was a 50% chance that the rhabdomyolysis was secondary to plaintiff's tasing and falling when he was tased.[7] Defendant contends that Thachenkary's testimony is insufficient

---

[7] The testimony provided does not indicate that Thachenkary was aware of plaintiff being separately slammed to the ground by Powell.

to support that the rhabdomyolysis was caused by the tasing because of the following aspects of Thachenkary's testimony, among others. Thachenkary had not previously treated any other patient who had been tased. Thachenkary did not know the wattage, amps, or voltage of the taser used on plaintiff. Thachenkary believed the length of the taser shock would affect his opinion as to whether tasing caused rhabdomyolysis, but was unaware of how long a shock plaintiff had received. Thachenkary had no special training regarding the effect of electrical impulses on the body and was unaware of any research regarding the relationship between being tased and developing rhabdomyolysis. In light of Thachenkary's lack of knowledge as to plaintiff's actual tasing, his testimony is insufficient to support that the tasing contributed to plaintiff suffering from rhabdomyolysis. Since plaintiff has not met his burden of pointing to sufficient evidence of causation, defendant is entitled to summary judgment precluding plaintiff from seeking to show at trial that his rhabdomyolysis was caused by defendant's misconduct.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [68] is granted in part and denied in part. All claims are dismissed except the excessive force claims against defendants Powell and Laster in their individual capacities. Plaintiff is precluded from being awarded any damages based on

suffering from rhabdomyolysis. Defendants Oliva, O'Meara, City of Calumet, and unidentified police officers are dismissed from this action. In open court on April 16, 2009 at 11:00 a.m., the parties shall submit an original and one copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1, including trial briefs, proposed voir dire questions, motions in limine with supporting briefs, and proposed jury instructions.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: FEBRUARY 5, 2009